NO. 12-40382
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

JUSTIN GRIFFIN
*Plaintiff-Appellant*
v.
S & B ENGINEERS AND CONSTRUCTORS, LIMITED
*Defendant-Appellee*
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

1:11-CV-00060
_____

BRIEF OF APPELLEE S & B ENGINEERS AND CONSTRUCTORS, LIMITED
_____

Linda Ottinger Headley
Danielle K. Herring
Alexis C. Knapp
LITTLER MENDELSON, P.C.
1301 McKinney, Suite 1900
Houston, TX 77010
Telephone: (713) 951-9400
Facsimile: (713) 951-9212

ATTORNEYS FOR DEFENDANT-APPELLEE
S & B ENGINEERS AND CONSTRUCTORS, LIMITED

<u>C</u>ERTIFICATE OF <u>I</u>NTERESTED <u>P</u>ERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the Court may evaluate possible disqualification or recusal:

**A.    Parties**

    **1.    <u>Plaintiff-Appellant</u>:**    Justin Griffin

    **2.    <u>Defendant-Appellee</u>:**    S & B Engineers and Constructors, Ltd.

**B.    Attorneys**

    **1.    <u>For the Plaintiff-Appellant</u>:**    John Werner
    REAUD, MORGAN & QUINN, L.L.P.
    801 Laurel Street
    Post Office Box 26005
    Beaumont, Texas 77720

    **2.    <u>For the Defendant-Appellee</u>:**    Linda Ottinger Headley
    Danielle K. Herring
    Alexis C. Knapp
    LITTLER MENDELSON, P.C.
    1301 McKinney Street, Suite 1900
    Houston, Texas  77010

*/s/ Linda Ottinger Headley*
Linda Ottinger Headley
Attorney for Defendant-Appellee

i

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

The Defendant-Appellee, S & B Engineers and Constructors, Ltd., respectfully submits that the issues raised in this appeal do not warrant oral argument.  This appeal presents questions of law guided by established principles under the Fair Labor Standards Act and the Portal-to-Portal Act.  The legal arguments presented in this appeal are clear and straightforward and the Defendant-Appellee does not believe that the Court's decisional process would be aided by oral argument.

TABLE OF CONTENTS

I. STATEMENT OF THE CASE ...................................................................1

II. FACTUAL BACKGROUND ...................................................................1

    A.    S & B's Employee Busing Program at the Motiva Facility. ...............1

    B.    Griffin's Employment with S & B. ...................................................2

    C.    Griffin Brings This Lawsuit. ............................................................4

III. SUMMARY OF THE ARGUMENT .....................................................4

IV. ARGUMENT AND AUTHORITIES .....................................................6

    A.    Standard of Review. ........................................................................6

    B.    Griffin's Time Spent on Bus Rides Is Not Compensable
        "Work" under the Portal-to-Portal Act. ..........................................7

    C.    Griffin's Arguments Cannot Overcome the Plain Language of
        the Portal-to-Portal Act and the Consistent Holdings of
        Applicable Case Law..................................................................... 10

        1.    Griffin Offers No Viable Support for His Position That
            the Mandatory Nature of the Bus Rides Renders Them
            Compensable......................................................................... 11

        2.    The Fact That Employees Are Subject to Basic Work
            Rules or Requirements While Traveling Does Not
            Render the Bus Rides Compensable Under the FLSA or
            Portal-to-Portal Act. ............................................................ 18

        3.    The Three-Part *Bonilla* Test Griffin Repeatedly Cites
            Does Not Apply to the Bus Rides in This Case.......................21

        4.    The Commercial Benefit of the Bus Rides and S & B's
            Business Decisions Related to Same Are Not Factors
            Used to Determine Compensability of Travel Time
            Under the FLSA or Portal-to-Portal Act.................................26

V. CONCLUSION .....................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bonilla v. Baker Concrete Constr., Inc.*,
    487 F.3d 1340 (11th Cir. 2007) ...............................................6, 9, 10, 16, 17, 20

*Cervantez v. Celestica Corp.*,
    253 F.R.D. 562 (C.D. Cal. 2008)..................................................................12

*Dolan v. Project Construction Corp.*,
    558 F. Supp. 1308 (D. Co. 1983)..............................................................18, 21

*Gilbane Bldg. Co. v. Admiral Ins. Co.*,
    664 F.3d 589 (5th Cir. 2011) .....................................................................6, 7

*Hodge v. Lear Siegler Services, Inc.*,
    No. CV-06-263-MHW, 2008 U.S. Dist. LEXIS 45128 (D. Idaho June 9,
    2008) ...................................................................................................17, 18

*Hyman v. Efficiency, Inc.*,
    605 S.E.2d 254 (N.C. App. 2004)....................................................11, 12, 13, 19

*IBP, Inc. v. Alvarez*,
    546 U.S. 21 (2005)........................................................................................9

*Johnson v. RGIS Inventory Specialists*,
    554 F. Supp. 2d 693 (E.D. Tex. 2007)......................................13, 14, 15, 19, 20

*Morillion v. Royal Packing Co.*,
    995 P.2d 139 (Cal. 2000)............................................................11, 12, 13, 16, 20

*Ralph v. Tidewater Constr. Corp.*,
    361 F. 2d 806 (4th Cir. 1966) .......................................................................17

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944)......................................................................................9

*Smith v. Aztec Well Servicing Co.*,
    462 F.3d 1274 (10th Cir. 2006) ................................................................17, 21

iv

*Vega ex rel. Trevino v. Gasper*,
36 F.3d 417 (5th Cir. 1994) ....................................................9, 13, 14, 15, 18, 20

**STATUTES**

29 U.S.C. § 201 *et seq.*...........................................................................................7

29 U.S.C. § 251 *et seq.*...........................................................................................7

29 U.S.C. § 254 ................................................................................5, 7, 8, 20

Fair Labor Standards Act ("FLSA")...................... 1, 2, 4, 5, 7, 10, 12, 15, 18, 19, 21

**OTHER AUTHORITIES**

29 C.F.R. § 785.1 .................................................................................................7

29 C.F.R. § 785.35 ..............................................................................................9

29 C.F.R. § 790.7(f) .......................................................................................5, 9, 13

FED. R. CIV. P. 56(a).........................................................................................7

# I.
## <u>STATEMENT OF THE CASE</u>

Appellant Justin Griffin ("Griffin") alleges that, during his two-week employment with Appellant S & B Engineers and Constructors, Ltd. ("S & B"), he was denied overtime for time spent on employer-mandated bus rides prior to the beginning and following the end of each workday to and from the job site where he performed his duties. Griffin filed a lawsuit against S & B for violations of the Fair Labor Standards Act ("FLSA"). The District Court bifurcated discovery into two phases, with Phase I focusing solely on the legal issue of the compensability of the bus rides.

At the conclusion of Phase I of the litigation, the parties filed motions for summary judgment on the controlling legal issue of whether the bus rides of which Griffin complains are compensable under the FLSA and the Portal-to-Portal Act. The District Court granted S & B's motion for summary judgment. Griffin now appeals the District Court's Final Judgment in favor of S & B.

# II.
## <u>FACTUAL BACKGROUND</u>

### A.  S & B'S EMPLOYEE BUSING PROGRAM AT THE MOTIVA FACILITY.

S & B has a contract to provide engineering and construction services to Motiva Enterprises, LLC ("Motiva") at its Port Arthur, Texas refinery location. *See* USCA5 43 ¶ 4.1, 453, 513-25. Motiva's facility in Port Arthur, Texas is highly secured, requiring every employee to swipe a badge to get in and out.

1

USCA5 472-75. There is security fencing present, as well as live security personnel. *Id.*

As a result of the requirement to maintain a safe environment and adhere to the access control/accountability system mandated by OSHA, as well as taking into account the highly-secured nature of the facility—and the thousands of workers employed by various employers who have had to enter the Motiva plant on a daily basis for the past several years—Motiva required all S & B employees working on the project, including, but not limited to Griffin, to ride S & B-provided buses from a designated parking lot into the Motiva facility before the start of each work day, and back to the same parking lot after the conclusion of each work day (hereafter referred to as "bus rides"). USCA5 460-61, 470-75, 494-95, 498, 501, 504-06. S & B employees would park their vehicles in the National Lot, a parking lot located approximately six or seven miles from the drop-off point at the Motiva facility. USCA5 470-72.

The bus rides between the National Lot and the Motiva facility were mandatory. USCA5 460-61. Employees were not compensated for time spent on the bus rides. USCA5 479-81; *see also, generally* USCA5 42-46.

### B. GRIFFIN'S EMPLOYMENT WITH S & B.

Griffin worked for S & B as a journeyman electrician on-site at the Motiva facility for two weeks – from approximately December 20, 2010 until January 6,

2

2011 – when he left "to work elsewhere for more money." *See* USCA5 43 ¶ 4.1, 462, 483-86, 489.  During his employment with S & B, Griffin earned $24.00 per hour and was eligible for overtime for all hours worked in excess of 40 in a single workweek.  USCA5 459-60, 491.

Griffin's shift began at 7:00 AM and ended at 5:30 PM Monday through Thursday, and his Friday shift was from 7:00 AM until 3:30 PM.  USCA5 467-68, 516, 527.  S & B never required Griffin to perform any work before 7:00 AM.  USCA5 94.  Prior to accepting employment with S & B at the Motiva facility, Griffin was aware that he would be required to take the bus from the parking lot into Motiva's facility and back again each day.  USCA5 460-61.

By his own admission, Griffin performed no work on or before these bus rides, nor did he receive any instructions from S & B about his job on or before these bus rides, but was instead free to sleep, read, talk to others, engage in other activities, or simply sit quietly during the bus rides.  USCA5 476-77, 481-82, 511.  Further, in his position as a journeyman electrician, no part of his job required him to drive a vehicle or ride a bus in order to perform his duties during the work day.  USCA5 462-65.  The tools necessary to perform his job stayed on the job site when he left each day, and he retrieved them after he arrived on the Motiva property each morning at 7:00 AM.  USCA5 466-67, 511.

3

Griffin received all straight time and all applicable overtime wages due him for all scheduled shifts during his two-week employment with S & B. USCA5 467-69.

### C.     GRIFFIN BRINGS THIS LAWSUIT.

After leaving his position with S & B, Griffin brought this lawsuit alleging unpaid wages under the FLSA for the time he spent on the bus rides to and from the National Lot and Motiva job site, filing the suit individually and as a collective action under the FLSA. USCA5 479-81; *see also, generally* USCA5 42-46. The District Court bifurcated discovery into two phases, with the first phase encompassing the applicability of the FLSA and the Portal-to-Portal Act to Griffin's claims. USCA5 37. Following the completion of Phase I discovery, Griffin and S & B filed motions for summary judgment on the controlling legal issue. *See* USCA5 91-120 (Plaintiff's Motion for Partial Summary Judgment), 438-49 (Defendant's Motion for Complete Summary Judgment). The District Court granted S & B's motion and entered final judgment in favor of S & B. USCA5 946-967 (Memorandum and Order), 968 (Final Judgment).

### III.
### SUMMARY OF THE ARGUMENT

The material facts in this case—that Griffin was required to ride S & B buses from the National Lot to the Motiva job site prior to the beginning and following the end of each workday and was not compensated for time spent on

4

these bus rides—are not disputed. Accordingly, this appeal focuses on a single legal question: whether the bus rides were compensable time under the FLSA and the Portal-to-Portal Act.

The Portal-to-Portal Act explicitly provides that time spent "walking, riding, or traveling to and from the actual place of performance of [an employee's] principal activity or activities" is non-compensable time. 29 U.S.C. § 254(a)(1). Likewise, in construing this statutory language, the Department of Labor ("DOL") has stated that riding buses to a worksite such as a factory, mine, or camp is not compensable time. 29 C.F.R. § 790.7(f). Federal courts have consistently and without exception followed these principles in holding that riding on employer-provided transportation to and from the worksite is not compensable time where, as here, the employee is not engaged in any principal work activities during the transit time.

Finding no support in the plain text of the Portal-to-Portal Act, the DOL interpretive language, or the on-point case law, Griffin attempts to shift the Court's focus in other directions, rehashing on appeal the same arguments that the District Court rejected. Each of Griffin's four arguments, however, remains either inapposite or irrelevant. First, although Griffin argues that the fact that the bus rides were "mandatory" should make them compensable, federal courts addressing mandatory transportation time akin to the bus rides involved in this case have

uniformly held that the "mandatory" nature of travel time does not render it compensable. Likewise, Griffin can point to no authority for his second argument that, because employees were subject to certain standards of conduct while on the bus rides, their time should be compensable. Third, the three-part *Bonilla* test that Griffin claims supports his position is misapplied in the travel-time context at issue in this case—and even if it applied, it too undercuts Griffin's position. Fourth, and finally, Griffin's argument that the busing program was "based on the business convenience and choices of Griffin's employer and its clients" simply has no place here. The reasons for the implementation of the busing plan, whatever they may be, have no bearing on the question before the Court regarding the compensability of travel time under the controlling statutory law.

The District Court correctly concluded that, under the applicable statutes, interpretive statements, and federal cases, the bus rides Griffin complains of are not compensable. Accordingly, the District Court's judgment in favor of S & B should be affirmed.

## IV.
## ARGUMENT AND AUTHORITIES

### A. STANDARD OF REVIEW.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards that the district court applied, and viewing the evidence in the light most favorable to the nonmoving party. *Gilbane Bldg. Co. v.*

*Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011).  Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting FED. R. CIV. P. 56(a)).

## B. GRIFFIN'S TIME SPENT ON BUS RIDES IS NOT COMPENSABLE "WORK" UNDER THE PORTAL-TO-PORTAL ACT.

Under the FLSA, "[t]he amount of money an employee should receive cannot be determined without knowing the number of hours worked."  29 C.F.R. § 785.1 (FLSA Regulations); *see also* 29 U.S.C. § 201 *et seq.* (FLSA).  Because the only issue in this case is whether the time Griffin spent on the bus rides between the National Lot and the Motiva facility was compensable, the very simple question to be answered is whether that time constitutes "work" under the FLSA or the Portal-to-Portal Act.[1]

Although the FLSA does not offer an express definition of "work," the Portal-to-Portal Act identifies the following activities that, as a matter of law, do not constitute compensable work time:

> (1)    walking, **riding, or traveling to and from the actual place of performance** of the principal activity or

---

[1]    The Portal-to-Portal Act amended the FLSA in 1947, and particularly relevant to this case, rendered certain employee activity outside of the regularly scheduled workday non-compensable under the Act. *See* 29 U.S.C. § 251 *et seq.*  As a historical note, the FLSA, which was enacted nine years earlier, had created what Congress called "wholly unexpected liabilities, immense in amount...[such that] the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others."  29 U.S.C. § 251(a). The Portal-to-Portal Act, in response to this crisis, created relief from some of those unintended liabilities, including, but not limited to, the type of travel time at issue in this case. *See, e.g.*, 29 U.S.C. § 254.

7

> activities which such employee is employed to perform, and
>
> (2) **activities which are preliminary to or postliminary** to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added).  Thus, Griffin's time on the bus rides, "traveling to and from" the Motiva job site—his "actual place of performance of the principal activity" S & B hired him to perform—is not compensable under the plain language of the statute.

The DOL has provided various examples of this non-compensable "walking, riding, or traveling" time which are instructive in this case:

> (1) walking or **riding by an employee between the plant gate** and the employee's lathe, workbench or other **actual place of performance of his principal activity or activities**;
>
> (2) **riding on buses between a town and an outlying mine or factory where the employee is employed**; and
>
> (3) **riding on buses** or trains **from a logging camp to a particular site at which the logging operations are actually being conducted.**

29 C.F.R. § 790.7(f) (emphasis added).[2]

The United States Supreme Court and federal circuit courts, including the Fifth Circuit, have also determined that according to this provision of the Act, an employee's ordinary, **non-compensable** commuting time to and from work each day extends until he arrives at the location where he performs his actual job duties – in this case, until Griffin arrived at his work station at the Motiva job site to perform his journeyman electrician duties. *See* 29 C.F.R. § 785.35 ("Normal travel from home to work is not worktime"); *see also IBP, Inc. v. Alvarez*, 546 U.S. 21, 30-31, 34 (2005) (finding that time spent by employees walking to the locker rooms to dress in certain protective gear was non-compensable time because it was "two steps removed" from their actual productive activity, and reinforcing that the "fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable'"); *Vega ex rel. Trevino v. Gasper*, 36 F.3d 417, 424-25 (5th Cir. 1994) (affirming that the four hours spent by farm workers on buses riding out to the field and back each day was a non-compensable "extended home-to-work-and-

---

[2]     As noted by the Eleventh Circuit in a case involving very similar facts, the DOL issued these interpretive statements to provide examples of compensable and non-compensable activities under the Portal-to-Portal Act, although Congress did not explicitly authorize the Agency to do so. *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1342-43 (11th Cir. 2007). Nevertheless, the DOL's "illustrative examples are persuasive and should be given due deference," particularly where, as here, they "speak[ ] directly to the issue at hand." *Id.* (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

back commute"); *Bonilla v. Baker Concrete Constr., Inc*., 487 F.3d 1340, 1342 (11th Cir. 2007) (analyzing whether employees were spending travel time to their actual worksite performing activities which were "integral and indispensable" to their primary job function, or whether they were merely continuing the travel to their actual place of performance, rendering that travel time non-compensable, non-working time).

Under the plain language of the statute and its amendments, as well as the DOL interpretive statements and all of the applicable case law, the time Griffin spent on bus rides from the National Lot to the Motiva facility was not compensable work time under the FLSA.

**C.    GRIFFIN'S ARGUMENTS CANNOT OVERCOME THE PLAIN LANGUAGE OF THE PORTAL-TO-PORTAL ACT AND THE CONSISTENT HOLDINGS OF APPLICABLE CASE LAW.**

In the face of this straightforward statutory language and consistent interpretations thereof, Griffin nonetheless puts forth four arguments as to why the bus rides should be compensable:  (1) the bus rides were mandatory; (2) employees were subject to certain rules on the bus rides; (3) the bus rides were "integral and indispensable" under the three-part *Bonilla* test; and (4) the busing program was created for the business convenience and commercial benefit of several "enormous corporations."

Griffin's arguments, however, are made without the support of viable legal authority, and the case law he cites is either wholly inapplicable to the facts of this case or supports S & B's position rather than his own. Instead, all of the case law on point supports S & B's position that the brief bus rides that are the basis of Griffin's suit are **non-compensable**.

> **1. Griffin Offers No Viable Support for His Position That the Mandatory Nature of the Bus Rides Renders Them Compensable.**

Griffin first argues that, because he was "forced" to use the busing system into the Motiva Plant, that such travel time must therefore be compensable. In an attempt to support his argument, Griffin cites an inapplicable California case interpreting California law, an inapplicable North Carolina case interpreting North Carolina law, and incorrectly states the holdings of two cases in this jurisdiction. *See* Br. of Appellant at 33-37. In so doing, Griffin ignores the wealth of on-point federal authority consistently holding that the "mandatory" nature of the bus rides does not render them compensable.

> a. *Morillion* and *Hyman* are Narrow Holdings Under State Law Which Are Wholly Inapplicable to This Case.

Griffin primarily supports his argument with state authority from California and North Carolina courts. As the District Court noted, however, these cases "are based on state law, and the courts specifically note that their holdings are based on state jurisprudence rather than federal law." USCA5 958 n.2. Griffin first relies

11

on a case from the California Supreme Court which he admits is "based on California state law," not federal law. Br. of Appellant at 10; *see also Morillion v. Royal Packing Co.*, 995 P.2d 139 (Cal. 2000) (addressing compensability of travel time under California state law and applicable state wage orders). It is undisputed that there are no California law issues in the present case and that only federal law is at issue – and therefore *Morillion* has no application to this case. Indeed, California has specifically and entirely disavowed itself of federal law when interpreting its state wage and hour laws, as "the California Supreme Court has expressly held that courts should not rely on interpretations of the FLSA to determine what is compensable under the California Labor Code." *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 570 (C.D. Cal. 2008). As noted by the District Court, *Morillion* itself "devot[es] an entire section to distinguishing federal authority from the state law at issue." USCA5 13 n.2 (citing *Morillion*, 995 P.2d at 147-51). Thus, while the fact that Griffin was required to utilize S & B's busing system might be dispositive of the compensability of those rides under California law, it does not render that same ride time compensable under the FLSA. *See id.*

Griffin also erroneously cites a North Carolina state case for the proposition that the mandatory nature of bus rides renders them compensable. *See* Br. of Appellant at 37; *see also Hyman v. Efficiency, Inc.*, 605 S.E.2d 254 (N.C. App. 2004). First, like *Morillion*, *Hyman* involved claims based "solely under

12

substantive state law," and the court noted it was not bound by federal law. *Hyman*, 605 S.E.2d at 256-57; *see also* USCA5 13 n.2. Next, the only portions of the case discussing the "optional" nature of the transportation, which Griffin loosely quotes in his Brief, are those that address the employer making deductions from the pay of employees to ride its optional transportation to the job sites, and the permissibility of those deductions under state law. *Id.* at 256-61. Later in its opinion, in finding the travel time to the job sites non-compensable riding time, the court focuses on the Department of Labor's Interpretive Statements found at 29 C.F.R. § 790.7(f) for its holding that "[t]ravel from an employer's campus to the 'actual place of performance' is noncompensable." Contrary to Griffin's suggestion, the *Hyman* court offers no distinction between mandatory or voluntary riding time. *Id.* at 263.

As the District Court correctly recognized, neither *Morillion* nor *Hyman* offer any guidance with regard to the compensability of the mandatory bus rides at issue in this case, and Griffin's reliance on both opinions is misplaced.

          b.    <u>Griffin's Reliance on the Holdings in *Vega* and *Johnson* Is Misplaced, As These Decisions Do Not Directly Address Mandatory Travel Time.</u>

Griffin also looks to the Fifth Circuit's *Vega* opinion for support for the proposition that the bus rides are compensable because they were "mandatory," although he admits (as he must) that that the *Vega* Court "found travel time of

13

seasonal farm workers to be non-compensable." *See* Br. of Appellant at 34; *see also Vega* F.3d at 424-25.  More specifically, this Court found that four hours spent by farm workers on buses riding out to the field and back each day was "indisputably" non-compensable, non-working time, and was merely an extension of the "home-to-work-and-back commute." *Vega*, 36 F.3d at 425.

Further, while Griffin argues that the Fifth Circuit took "great pains" to distinguish between optional and mandatory use of employer vehicles in *Vega*, the Court never reached this issue.  *See* Br. of Appellant at 34-35; *see also Vega*, 36 F.3d at 424-25.  A thorough review of the opinion instead demonstrates that while the Court briefly mentions that the bus rides in *Vega* were not required, it focused its analysis on the fact that, whether employees drove themselves or rode on the buses, the ride was simply part of the normal, non-compensable commute to work because employees—like Griffin here—performed no work while in transit on the buses or driving.  *See Vega*, 36 F.3d at 424-25.

Griffin further attempts to rely upon an earlier decision of the District Court for his position that the mandatory nature of the bus rides renders them compensable.  In *Johnson v. RGIS Inventory Specialists*, 554 F. Supp. 2d 693 (E.D. Tex. 2007), the District Court found that an auditor's travel time to and from the meet site in a company van was part of the ordinary home-to-work commute, and was thus non-compensable, non-working time.  *Id.* at 704-06.  Although the court

14

noted that the travel in company vehicles was optional, the analysis in *Johnson* focused on the fact that the travel was a "contemplated, normal occurrence" of employment and that the plaintiff performed no integral and indispensable work on these rides.  *Id.*  The court, similar to the *Vega* Court, did not hold that the rides being mandatory would have affected its ruling on compensability, and in fact noted that "[e]ven if use of the transportation was strongly encouraged by [the employer], this was related to business and commuting logistics rather than the auditors' principal activities."[3]  *Id.* at 705.

Griffin incorrectly relies on both *Vega* and *Johnson* as support for his proposition that the voluntary nature of the company-provided travel is the condition which renders the travel time in those cases non-compensable, and that therefore his mandatory travel must have been compensable.  Neither the Fifth Circuit nor the District Court below has ever drawn such a conclusion, and such a theory is not supported by any court interpreting the FLSA or Portal-to-Portal Act.

> c. The Wealth of On Point Authority Directly Contradicts Griffin's Position that the Mandatory Nature of the Bus Rides Renders them Compensable.

Indeed, the federal courts that have focused on "mandatory" travel time, such as the bus rides at issue in this case, have repeatedly held that an employer requiring employees to ride on company-provided transportation does not render

---

[3] Indeed, the District Court specifically noted that the *Johnson* decision (which the District Court authored) and the *Vega* decision "are not directly on point."  USCA5 957.

15

such travel time compensable work time.[4]   In *Bonilla*, employees working at an airport faced a two-step commute to work.   *Bonilla*, 487 F.3d at 1341.   The employer provided optional transportation to an airport security checkpoint that all employees were required to pass through (similar to the National Lot in this case where Griffin parked his car, badged in and boarded the bus).   *Id.*   After the employees passed through the checkpoint, they were required to ride in vehicles provided by the employer to the work site, as no unauthorized vehicles were allowed on airport grounds (as is true at the Motiva Plant).   *Id.*   In finding the time non-compensable, non-working time, the Court disposed of the mandatory/voluntary issue, instead finding the dispositive factor to be that the employees "did not perform any labor while waiting for or riding the vehicles," and thus the time spent on those rides was not "integral and indispensable."   *Id.*   As the court explained:

> The fact that the workers were **required** to ride authorized transportation after the security gate but the transportation to the security gate was optional **is not relevant** to the outcome of this case **because even mandatory travel time is exempted from compensation under the Portal-to-Portal Act**...
>
> ...If mere causal necessity was sufficient to constitute a compensable activity, all commuting would be compensable because it is a practical necessity for all

---

[4] As evidenced by this section, Griffin's claim in his Brief that the *Morillion* decision is the "only reported decision on-point" regarding mandatory travel in employer-provided vehicles is simply not correct. *See* Br. of Appellant at 10.

16

> workers to travel from their homes to their jobs. If the Portal-to-Portal Act is to have any meaning at all, its terms cannot be swallowed by an all-inclusive definition of 'integral and indispensable.'

*Id.* at 1343 (emphasis added); *see also Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1280, 1287-88 (10th Cir. 2006) (affirming that required, company-sponsored travel to drill sites—which varied between thirty minutes and three and a half hours each way—was non-compensable, non-working time, and that the mandatory nature of these rides was entirely irrelevant unless employees performed integral and indispensable duties during these rides); *Ralph v. Tidewater Constr. Corp.*, 361 F. 2d 806, 807-09 (4th Cir. 1966) (construction workers who were required to take boat rides of 15 minutes to an hour each way to and from their job sites were not entitled to compensation for those rides as hours worked).

A district court faced a similar circumstance in *Hodge v. Lear Siegler Services, Inc.*, No. CV-06-263-MHW, 2008 U.S. Dist. LEXIS 45128 (D. Idaho June 9, 2008). *Hodge* involved hourly employees housed in military bases to support the United States' mission in Iraq. *Id.* at *3. The employees did not have a choice regarding the proximity of their housing to the work sites, and they were required to travel in company-supplied vans and buses for up to 30 minutes each way to and from their work sites. *Id.* at *4. The transportation took the employees through "hazardous terrain," through a security checkpoint, and "over long distances." *Id.* at *31. Despite the mandatory nature of the employer-sponsored

17

travel, the court held that the bus rides in that case were not compensable time, as riding in buses and vans was not "integral and indispensable" to the job duties of the employees. *Id.*

Finally, on facts identical to those present here, the court in *Dolan v. Project Construction Corp.*, 558 F. Supp. 1308 (D. Co. 1983)—which the Fifth Circuit's *Vega* decision cites as instructive—found that electricians working on a construction project who were <u>required</u> to ride the employer's buses to the jobsite were not entitled to compensation for that ride time under the FLSA. *Id.* at 1309-11. The mandatory bus rides in *Dolan*, like those Griffin complains of here, took approximately 20-30 minutes and were required due to security considerations and safety and traffic problems on the road that led to the job site. *Id.* Under the plain language of the Portal-to-Portal Act, the court found the required time spent on company-provided buses was non-compensable, non-working time. *Id.*

Griffin can point to no court in the Fifth Circuit or any other circuit which has held that an employer requiring employees to use company-provided transportation to a job site renders it compensable work time under the FLSA.

      **2.**      **The Fact That Employees Are Subject to Basic Work Rules or Requirements While Traveling Does Not Render the Bus Rides Compensable Under the FLSA or Portal-to-Portal Act.**

Griffin next argues that the time spent riding the bus into the Motiva facility was compensable because he was "considered to be 'on the worksite' and subject

to plant rules and discipline while riding the bus." *See* Br. of Appellant at 38-39. In essence, Griffin argues that because he was subject to some guidance or expectations by S & B during the bus rides, his bus ride time should be compensable – an argument for which there is no support in the law.

Griffin states, and S & B does not dispute, that while riding the bus into the Motiva facility, employees had to adhere to certain rules of conduct, and could be disciplined for failing to do so. *See id.* Griffin fails to cite any applicable authority for his position that this renders the bus ride time compensable. Griffin again cites *Johnson* and *Hyman*, stating that if employees cannot smoke, use their cell phones, possess a cell phone with a camera, and the like while riding the bus, then they must be compensated for such time. *See id.* Once again, neither case stands for this proposition. *Johnson* simply identifies some of the activities employees engaged in while traveling to work (such travel time found to be non-compensable by the Court), and *Hyman* refers to the activities employees engaged in while waiting after arriving at the job site (such time found to be non-compensable by that court), not traveling to it. *See Johnson*, 554 F. Supp. 2d at 704-05; *see also Hyman*, 605 S.E.2d at 262-63. Neither decision addresses employer rules of conduct on mandatory, employer-provided transportation, nor is there any indication in either decision that such rules might affect the compensability of travel time.

19

Griffin also again cites *Morillion*, this time for the proposition that any control by the employer yields compensability, but as discussed fully above and as noted by the District Court, *Morillion* contains no analysis of federal law and is inapplicable to this case. Finally, Griffin cites to several cases in his Brief which deal with wait time once an employee arrives on the job site and cannot yet begin work. *See* Br. of Appellant at 39 & n.2. Wait time is not an issue in this case, and in any event, courts do not analyze the compensability of wait time under the same statutory framework as the travel time that occurs prior to arrival at the place an employee performs his principal job duties. *See* 29 U.S.C. § 254(a); *Bonilla*, 487 F.3d at 1344; *see also* SECTION IV.C.3 of this Brief.

In addition to Griffin's lack of authority for his position that being subject to certain work rules or expectations renders the bus rides compensable, the case law actually demonstrates that employees engaging in only incidental activity regarding their work day before or during their ride time does nothing to render such ride time compensable. *See Vega*, 36 F.3d at 425 (although the workers were given work instructions on the bus and were considered "hired" by the owner before the buses departed, such ride time was nevertheless non-compensable); *see also Johnson*, 554 F. Supp. 2d at 705-06 (finding that even though the plaintiff occasionally assisted with loading of the company vans prior to departure, because such loading assistance was not integral and indispensable to plaintiff's particular

job duties, such loading assistance time was non-compensable); *Smith*, 462 F.3d at1281-82, 1287-90 (employees who helped change flat tires, opened and closed access gates on the road, helped get the vehicle they were riding in out of the mud, put chains on the tires, carried equipment and paperwork and were subjected to lengthy safety meetings while in route to their job site using mandatory, employer-provided transportation, were not entitled to compensation for their ride time, which extended anywhere from thirty minutes to 3.5 hours); *Dolan*, 558 F. Supp. at 1309-11 (although workers were required to "brass in" at the main camp prior to mandatory bus rides in order to "verify attendance and control access to the job site," similar to the facts in this case, and received their paychecks and occasional instructions and directions while riding the bus, the bus rides were nonetheless non-compensable).

Griffin can offer no support for his argument that being subjected to certain conduct expectations while riding a secured bus into the Motiva Plant renders that travel time compensable under the FLSA or the Portal-to-Portal Act.

### 3.    The Three-Part *Bonilla* Test Griffin Repeatedly Cites Does Not Apply to the Bus Rides in This Case.

Griffin next claims in his Brief that the bus rides from the National Parking Lot to the Motiva Plant were "integral and indispensable" under a three-part test outlined in the Eleventh Circuit's *Bonilla* opinion, the Fifth Circuit's *Dunlop* opinion and mentioned in the District Court's *Johnson* opinion, and therefore his

bus ride was compensable. *See* Br. of Appellant at 40-41; *see also Bonilla*, 487 F.3d at 1340; *Dunlop v. City Electric, Inc.*, 527 F.2d 394 (5th Cir. 1976); *Johnson*, 554 F. Supp. at 704-06. Specifically, those factors are: "(1) whether the activity is required by the employer; (2) whether the activity is necessary for the employee to perform his or her duties; and (3) whether the activity primarily benefits the employer." *See* Br. of Appellant at 40 (citing *Bonilla*, 487 F.3d at 1344).

However, Griffin confuses two sections of the Portal-to-Portal Act and the reference by the courts to this three-part test. Travel time can be evaluated under two different sections of the Portal-to-Portal Act–either § 254(a)(1) or § 254(a)(2). *See, e.g.*, *Bonilla*, 487 F.3d at 1343-44. Section 254(a)(1) explicitly exempts travel time to and from the place of performance of principal activities. 29 U.S.C. § 254(a)(1). As the DOL has explained, this specifically includes "riding by an employee between the plant gate and the employee's...actual place of performance...riding on buses between a town and an outlying mine or factory...riding on buses...from a logging camp to a particular site at which the logging operations are actually being conducted." 29 C.F.R. §790.7(f). Travel time that falls within these categories—such as the bus ride time at issue in this case—is non-compensable under the plain language of § 254(a)(1) of the Portal-to-Portal Act.

Alternatively, travel time **not** exempted under the plain language of § 254(a)(1) is analyzed under § 254(a)(2), to determine whether it is "preliminary or postliminary to said principal activity or activities" (non-compensable) or is instead "integral and indispensable" to the job (compensable).   29 U.S.C. § 254(a)(2); *Vega,* 36 F.3d at 424; *Dunlop*, 527 F.2d at 400-01; *Johnson*, 554 F. Supp. 2d at 702.[5]  In *Bonilla*, the Court explained this difference:

> The Department of Labor has issued interpretive statements giving examples of non-compensable travel under § 254(a)...[but] **[u]nlike the time spent riding the employer vehicles**, **the time appellants spent going through airport security is not exempted under § 254(a)(1),** so we must determine if this security screening is exempted under another provision...Section 254(a)(2) exempts 'activities which are preliminary to or postliminary to said principal activity or activities.'" **The Supreme Court has interpreted this section to apply when an activity** before or after the principal work activity is not an "integral and indispensable part of the principal activities for which covered workmen are employed and are **not specifically excluded by Section [254(a)(1)].**"

*Bonilla*, 487 F.3d at 1344 (emphasis added); *see also Dolan*, 558 F. Supp. at 1310 (stating that because the only issue was mandatory travel time "to and from the actual place of performance," the court was only "concerned with the applicability

---

[5]   This analysis applies to any type of activities which are preliminary and postliminary, not just to travel time, and is thus heavily relied on in cases evaluating wait time once an employee arrives at the job site. *See, e.g., Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398-99 (5th Cir. 1976) (analyzing the compensability of essential, on-site activities which were integral to the plaintiff's work under this framework).

of 254(a)(1) rather than 254(a)(2)"). Thus, if travel time is analyzed under § 254(a)(2), assuming § 254(a)(1) does not apply, then—and only then—do courts analyze the nature of the travel time under the three-part test relied upon by Griffin. *Bonilla*, 487 F.3d at 1344. Because the type of travel time at issue in this case fits squarely within § 254(a)(1), the three-part analysis under § 254(a)(2) does not apply.

Significantly, and to further emphasize that this three-part test is inapplicable to the bus ride time that Griffin complains of in this lawsuit, none of the opinions relied upon by Griffin utilized this test to find that travel time to a job site was compensable under the FLSA and Portal-to-Portal Act. In *Bonilla*, the court found that the mandatory travel on company buses into the airport facility—almost identical to that complained of by Griffin in this case—was entirely non-compensable under the plain language of § 254(a)(1), without analyzing such travel under the three-part test. *Bonilla*, 487 F.3d at 1343. Similarly, in *Johnson*, the District Court found that an auditor's travel time to and from the meet site in a company van was part of the ordinary home-to-work commute, and was thus non-compensable, non-working time. *Johnson*, 554 F. Supp. 2d at 704-706. Finally, the *Dunlop* case cited by Griffin involved only an analysis of non-travel time activity under § 254(a)(2). *Dunlop*, 527 F.2d at 397 (addressing only integral on-site activities such as "filling out daily time sheets, material sheets, and supply and

24

cash requisition sheets, checking job locations, removing from trucks trash accumulated during the previous day's work, loading the trucks with standard materials and any additional materials needed for the particular day's job, fueling the trucks, and picking up electrical plans for the day's job," and no travel time).

Indeed, as the cases above suggest, Griffin's claims fail even if the three-part test is applied. Although the travel time at issue in this case is travel to the place of performance of Griffin's principal duties and is therefore non-compensable under § 254(a)(1), it would nevertheless fail to qualify as "integral and indispensable" under § 254(a)(2). Griffin has testified that he performed no work before or during these bus rides, nor did he receive any instructions from S & B about his job before or during these bus rides, but was instead free to sleep, read, talk to others, engage in other activities, or simply sit quietly during the bus rides. *See* USCA5 476-77, 481-82, 511. Accordingly, not only did the bus ride time not involve performance of Griffin's "principal activities"—the duties he performed as a journeyman electrician for S & B—but this time also conferred no benefit under the *Bonilla* test, rendering the time non-compensable in any event. *See Hodge*, 2008 U.S. Dist. LEXIS 45128, at *25-29 (holding no benefit conferred upon employer by employees' riding of vans to worksite); *Mossbauer v. United States*, 541 F.2d 823, 826 (9th Cir. 1976) (holding commute time noncompensable because the employee "did nothing during the commute that was integral to the performance of his duties

25

or that conferred a benefit on his employer"); *see also Adams v. United States*, 471

F.3d 1321, 1327-28 (Fed. Cir. 2006) ("[C]ommuting done for the employer's

benefit, under the employer's rules, is noncompensable if the labor beyond the

mere act of driving the vehicle is *de minimis*.").

Griffin's reliance on the three-part test referenced in *Bonilla*, *Dunlop* and

*Johnson* is misplaced, and even if applied provides no grounds for reversing the

District Court's judgment.

### 4. The Commercial Benefit of the Bus Rides and S & B's Business Decisions Related to Same Are Not Factors Used to Determine Compensability of Travel Time Under the FLSA or Portal-to-Portal Act.

Finally, Griffin's Brief attacks S & B and other "enormous corporations" for

agreeing to and implementing the busing system that carried Griffin and others into

the Motiva Plant, accusing S & B of doing so for its own "commercial benefit," for

choosing busing because it "presented no additional cost or hassle," for making

decisions related to busing that were solely "aimed at pleasing and appeasing

[S & B's] direct and indirect clients," and even suggests a class system or "pecking

order" in the busing because Griffin was required to ride a bus in, while a few

S & B staff members and management parked directly on-site. *See* Br. of

Appellant at 9, 41-44. Griffin misses the point. S & B does not dispute that the

busing was implemented in response to a requirement of its customer for safety

and logistical reasons, that such agreements yield a commercial benefit for all of

the companies and employees involved (including Griffin who was able to work on this project), nor does it dispute that a few vehicles were permitted to park inside the gates while most employees were bused in. *See* Section II.A of this Brief. Simply stated, if S & B wanted to be one of the Motiva contractors for this project, it had to come up with a busing plan for its employees – so it did. *See id.*

Importantly, in scrutinizing the business reasons for implementing the busing to the Motiva Plant, Griffin cites no authority to demonstrate that courts consider any of these issues when determining the compensability of travel time, including, but not limited to, the travel time at issue in this case. *See* Br. of Appellant at 9, 41-44. In fact, a review of the case law on this issue illustrates that transportation of employees from some central location to their actual work sites is always for some "commercial" reason, that it is often directed at "pleasing" clients, and that for practical and/or logistical reasons, employees cannot all park on-site where the work is being performed. *See, e.g.*, *Bonilla*, 487 F.3d 1340 (mandatory travel time non-compensable); *Smith*, 462 F.3d 1274 (same); *Dolan*, 558 F. Supp. 1308 (same); *Hodge*, 2008 U.S. Dist. LEXIS 45128 (same). Yet not a single one of these cases cites any of these business realities in employer-required travel as being connected to the question of compensability of travel time under the FLSA or Portal-to-Portal Act. *See id.*

Griffin's criticisms of S & B's client-focus and the commercial necessity of the busing have no bearing on whether the bus rides are compensable under applicable law, and in fact, run contrary to the case law.  Accordingly, as each of Griffin's arguments fail under the plain statutory language of the Portal-to-Portal Act and consistent interpretations thereof by the DOL and the federal courts, the judgment of the District Court should be affirmed.

## V.
## CONCLUSION

For the foregoing reasons, Appellee S & B Engineers and Constructors, Ltd. respectfully prays that this Court affirm the judgment of the District Court.

Respectfully submitted,

By: */s/ Linda Ottinger Headley*
      Linda Ottinger Headley
      Texas State Bar No. 15344600
      Federal ID No. 3759
      Danielle K. Herring
      Texas State Bar No. 24041281
      Federal ID No. 36896
      Alexis C. Knapp
      Texas State Bar No. 24060100
      Federal ID No. 871271
      LITTLER MENDELSON, P.C.
      1301 McKinney, Suite 1900
      Houston, TX  77010
      Telephone: (713) 951-9400
      Facsimile: (713) 951-9212

      ATTORNEYS FOR THE DEFENDANT-APPELLEE
      S&B ENGINEERS AND CONSTRUCTORS, LTD.

<u>**CERTIFICATE OF SERVICE**</u>

     I hereby certify that on July 30, 2012, one copy of this Brief of Appellee was electronically filed with the clerk of the United States Court of Appeals for the Fifth Circuit and the electronic case filing system sent a notice of the filing and an electronic copy of the Brief of Appellee to the following attorney of record:

John Werner

REAUD, MORGAN & QUINN, L.L.P

801 Laurel Street

Post Office Box 26005

Beaumont, Texas 77720

ATTORNEY FOR PLAINTIFF-APPELLANT

*/s/ Linda Ottinger Headley*

Linda Ottinger Headley

Attorney for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

1.    The brief contains 6,860 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.    The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14 point font in text and Times New Roman 12 point font in the footnotes.

3.    Undersigned counsel understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fifth Circuit Rule 32(a)(2)(7)(B) may result in the Court's striking this brief and imposing sanctions against the person signing it.

*/s/ Linda Ottinger Headley*
Linda Ottinger Headley
Attorney for Defendant-Appellee
Dated:  July 30, 2012